*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 30, 2014                    105660
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

          v                                MEMORANDUM AND ORDER

TARON GIBSON,
                        Appellant.
_____

Calendar Date:  September 2, 2014

Before:  Lahtinen, J.P., Stein, McCarthy, Rose and Devine, JJ.

                        _____

        Catherine A. Barber, Albany, for appellant.

        Robert M. Carney, District Attorney, Schenectady (Gerald A.
Dwyer of counsel), for respondent.

                        _____

Devine, J.

        Appeal from a judgment of the County Court of Schenectady
County (Giardino, J.), rendered December 4, 2012, upon a verdict
convicting defendant of the crimes of criminal sale of a
controlled substance in the third degree (two counts) and
criminal possession of a controlled substance in the third degree
(two counts).

        On May 18, 2011 and June 1, 2011, defendant sold heroin to
a confidential informant (hereinafter CI) during a controlled-buy
operation overseen by law enforcement officers in the City of
Schenectady, Schenectady County.  Defendant was subsequently
arrested and indicted for the crimes of criminal sale of a
controlled substance in the third degree (two counts) and
criminal possession of a controlled substance in the third degree

(two counts).  Following a jury trial, defendant was convicted as charged and was sentenced as a second felony offender to an aggregate prison term of seven years, followed by three years of postrelease supervision.  Defendant now appeals.

We find, contrary to defendant's assertions, that the conviction was supported by legally sufficient evidence and was not against the weight of the evidence.  During the trial, the CI stated that she called defendant, who had previously sold her heroin and was known under the street name Taz, on her cellular phone and arranged the first of two controlled drug buys.  After law enforcement officers ensured that she was not in possession of drugs, the CI testified that she was provided $100 to make a drug purchase and was wired with a recording device.  Thereafter, the CI met defendant at a prearranged location and entered the gold-colored Mercedes that defendant was driving, which vehicle was registered to defendant's spouse, wherein the CI exchanged the money for seven glassine packets of heroin.  Additionally, the CI testified at trial that, on the date of the second controlled buy, she similarly contacted defendant to set up another drug sale and was again searched for drugs by law enforcement officers, fitted with recording equipment and given $130 to buy drugs.  The CI averred that defendant arrived at the agreed-upon location in the same gold Mercedes and she entered the front passenger side of the vehicle.  After defendant took the money from her, however, he informed her that he would return later to deliver the drugs.  Video and audio evidence corroborates the CI's testimony that defendant returned a short time later in the Mercedes and was accompanied by another individual who was sitting in the front seat of the vehicle.  While she was seated in the rear of the vehicle, the CI averred that defendant handed her 10 packets of heroin.  At the conclusion of both coordinated drug buys, the CI was, once again, searched for drugs or other paraphernalia.  A forensic scientist who tested the bags that defendant sold to the CI confirmed that they contained heroin.

In his defense, defendant testified, as did his mother, wife and sister, that he was not in Schenectady on the dates of the controlled buys, as he had traveled to his mother's residence in the Bronx to visit his mother and other family members on May

16, 2011.  Thereafter, he went to Tennessee to attend a memorial service for his deceased father, as well as other out-of-state locations, ultimately returning to New York in late May and remaining at his mother's residence until June 6, 2011.  To determine if the evidence is legally sufficient, "we must view the evidence in a light most favorable to the People [and] determine whether a valid line of reasoning exists that supports the essential elements of the crime[s] for which defendant stands convicted" (People v Souffrant, 93 AD3d 885, 886 [2012], lv denied 19 NY3d 968 [2012]; see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Acevedo, 118 AD3d 1103, 1104 [2014]).  We find that the evidence proffered at trial established, beyond a reasonable doubt, that defendant knowingly and unlawfully possessed heroin, a narcotic drug, with the intent to sell it and, indeed, knowingly and unlawfully sold heroin to the CI on two separate occasions (see Penal Law §§ 220.16 [1]; 220.39 [1]; People v Stevens, 87 AD3d 754, 754-755 [2011], lvs denied 18 NY3d 861 [2011]).

Nor do we find that the jury verdict is against the weight of the evidence.  Such review entails weighing "the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony while viewing the evidence in a neutral light and giving deference to the jury's credibility assessments" (People v Gaudiosi, 110 AD3d 1347, 1348 [2013], lv denied 22 NY3d 1040 [2013] [internal quotation marks and citations omitted]; see People v Burroughs, 64 AD3d 894, 897 [2009], lv denied 13 NY3d 794 [2009]).  Defendant argues that the testimony of the CI — the only witness to identify him as the individual who sold the drugs — was unconvincing, as the CI, an admitted drug addict, exhibited memory problems during trial and was motivated to assist in securing defendant's conviction out of fear of being prosecuted for her own drug charges.  We note that, while the CI was unable to recall certain details about the transactions, her testimony was consistent and was corroborated by the law enforcement officials that conducted the controlled buy operation (see People v Wilson, 100 AD3d 1045, 1046 [2012], lv denied 22 NY3d 998 [2013]; People v Lawal, 73 AD3d 1287, 1289 [2010]).  Moreover, defendant thoroughly cross-examined the CI regarding, among other things, her self-interest in assisting law enforcement and her

drug addiction issues (see People v Tisdale, 103 AD3d 987, 988 [2013], lvs denied 21 NY3d 1004, 1010 [2013]; People v Jones, 101 AD3d 1241, 1241-1242 [2012], lv denied 21 NY3d 944 [2013]; People v Wilson, 100 AD3d at 1046).  The members of the jury obviously refused to credit defendant's testimony and that of defendant's spouse and family members, all of which was affected by inconsistencies and ambiguities, in making credibility determinations "which are solely within their province" (People v Coffin, 263 AD2d 780, 781 [1999]; see People v Robinson, 117 AD3d 1099, 1099-1100 [2014], lvs denied 23 NY3d 1059, 1066 [2014]; People v Williamson, 77 AD3d 1183, 1184 [2010]).

As for defendant's preserved challenges to County Court's jury charges relating to credibility and identification, he asserts that the court's alteration of the agreed-upon charges caused jury confusion that requires a reversal of the judgment of conviction.[1]  Specifically, defendant maintains that the court's instruction that the jury, in considering whether a witness' statements were inconsistent with prior trial testimony "or other statements," likely gave the jury the impression that there was evidence beyond the trial testimony that should have been considered.  We find, however, that the charge, "taken as a whole, conveyed to the jury the correct standard" (People v Medina, 18 NY3d 98, 104 [2011] [internal quotation marks and citations omitted]; see People v Green, 108 AD3d 782, 785 [2013], lv denied 21 NY3d 1074 [2013]).  Defendant also challenges County Court's instruction regarding witness identification.  County Court explained that, in deciding whether a witness's identification testimony is accurate, the jury should consider "factors such as but not limited to the following," and provided a list of such factors.  Defendant maintains that the court's inclusion of the phrase "but not limited to" created undue ambiguity and confusion, as demonstrated by the jury's request for a read-back of the instruction.  We are mindful that an exact

_____

[1]     Although defendant challenged certain jury instructions during the trial, he made no objection to County Court's alibi charge and, therefore, failed to preserve the claim for our review (see People v Melendez, 16 NY3d 869, 870 [2011]; People v Wilson, 108 AD3d 1011, 1013 [2013]).

recitation of the Criminal Jury Instructions, which "contain the 'preferred phrasing'" for instructing a jury would likely have avoided the instant controversy, but inasmuch as the court's identification instruction closely followed the Criminal Jury Instructions, no reversal is warranted (People v Bailey, 305 AD2d 304, 305 [2003], lv denied 100 NY2d 617 [2003], quoting People v Cubino, 88 NY2d 998, 1000 [1996]; see CJI2d[NY] Identification § 4:48).

Finally, with regard to defendant's claim that his sentence is harsh and excessive, as we discern no abuse of County Court's discretion or any extraordinary circumstances, we are not compelled to reduce the sentence (see People v Wilson, 78 AD3d 1213, 1217 [2010], lv denied, 16 NY3d 747 [2011]).

Lahtinen, J.P., Stein, McCarthy and Rose, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court